## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VIVINT, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>NORTH STAR ALARM SERVICES, LLC,<br><br>                    Defendant. | **REPORT AND RECOMMENDATION REGARDING MOTION FOR LEAVE TO AMEND ANSWER TO ASSERT COUNTERCLAIMS AND ADDITIONAL AFFIRMATIVE DEFENSES (ECF NO. 113)**<br><br>Case No.  2:16-cv-00106-JNP-EJF<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Evelyn J. Furse |

On November 20, 2015, Plaintiff Vivint, Inc. ("Vivint") filed this deceptive sales

practices case in state court against NorthStar Alarm Services, LLC ("NorthStar").  (ECF

No. 2-3.)  NorthStar did not assert any counterclaims against Vivint in the two Answers

it filed.  (ECF Nos. 5 & 12.)  On August 1, 2016, the cutoff date for filing amended

pleadings passed, (Scheduling Order & Order Vacating Hr'g ("Schd. Order") 3, ECF No.

17), and fact discovery closed on October 20, 2017 (Order Granting Joint Mot. for

Enlargement of Deadlines ("Enlargement Order") 2, ECF No. 99).  On September 20,

2017, NorthStar sought leave to amend its Answer to add three new affirmative

defenses and assert six counterclaims against Vivint.  (Mot. for Leave to Am. Answer to

Assert Countercls. & Add'l Affirmative Defenses ("Mot."), ECF No. 113.)  Vivint opposes

NorthStar's Motion as untimely, unduly prejudicial, and futile.  (Vivint, Inc.'s Mem. in

Opp'n to NorthStar's Mot. to Am. Answer to Assert Countercls. & Add'l Affirmative

Defenses ("Opp'n"), ECF No. 119.)  For the reasons addressed below, the undersigned[1] RECOMMENDS the Court DENY NorthStar's Motion (ECF No. 113).

## I.    BACKGROUND

The First Amended Complaint (the "Complaint") asserts six causes of action against NorthStar, five of which, including claims for violations of the Utah Deceptive Trade Practices Act and Lanham Act, arise out of allegedly deceptive sales practices NorthStar employed against Vivint customers.  (1st Am. Compl. & Jury Demand, ECF No. 11.)  Vivint also seeks a declaratory judgment concerning a Confidential Settlement Agreement between Vivint and Vision Security, LLC ("Vision Security").  (Id.)  NorthStar allegedly merged with Vision Security, and Vivint claims the Settlement Agreement requires the parties to submit to binding arbitration to resolve a dispute concerning improper sales tactics.  (Id. at 3-4, 9–11.)  Both NorthStar's original Answer, filed on February 5, 2016 (ECF No. 5), and its Amended Answer, filed on March 11, 2017 (ECF No. 12), assert fourteen affirmative defenses but no counterclaims against Vivint.

On April 1, 2016, the Court entered a Scheduling Order setting August 1, 2016 as the deadline to amend pleadings, December 1, 2016 as the last day to serve written discovery, and December 31, 2016 as the fact discovery cut-off.  (Schd. Order 2–3, ECF No. 17.)  On December 1, 2016, the Court granted the parties' first Joint Motion for Enlargement of Deadlines (ECF No. 78), extending the last day to serve written discovery to April 14, 2017 and the fact discovery cut-off to May 15, 2017.  (ECF No. 82 at 1.)  On April 24, 2017, the Court granted the parties' second Joint Motion for Enlargement of Deadlines (Joint Mot. for Enlargement of Deadlines ("Joint Mot."), ECF

---

[1] The District Judge referred this case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A).  (ECF No. 10.)

No. 96), extending the last day to serve written discovery to September 20, 2017 and

the fact discovery cut-off to October 20, 2017.  (Enlargement Order 2, ECF No. 99.)

The Order also set new deadlines for expert discovery and dispositive motions and

states that, absent further extensions, the parties can generally expect trial to go

forward in the fourth quarter of 2018.  (Id.)

NorthStar filed its Motion for Leave to Amend on September 20, 2017.  (Mot.,

ECF No. 113.)  NorthStar's proposed amendment seeks to add three affirmative

defenses:  (1) accord and satisfaction, (2) release, and (3) payment.  (Am. Answer &

Affirmative Defenses to 1st Am. Compl. & Jury Demand & Countercls. ("Proposed Am.

Answer") 17–18, ECF No. 113-1.)  The affirmative defenses relate to a purported

dispute resolution agreement between the parties that NorthStar claims it recently

learned about during depositions of current and former Vivint employees.  (Mot. 3–4,

ECF No. 113.)  NorthStar also seeks to assert five counterclaims against Vivint alleging

deceptive sales practices toward NorthStar's customers and a counterclaim for abuse of

process based on Vivint's alleged improper use of information learned during this

lawsuit.  (Proposed Am. Answer 18-36, ECF No. 113-1; Mot. 4-6, ECF No. 113.)

## II.    LEGAL STANDARD

"After a scheduling order deadline, a party seeking leave to amend must

demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and

(2) satisfaction of the Rule 15(a) standard."  Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l

Bank Ass'n, 771 F.3d 1230, 1240 (10th Cir. 2014); see also Birch v. Polaris Indus., 812

F.3d 1238, 1247 (10th Cir. 2015) (stating that both Rules 15 and 16 govern a motion to

amend pleadings after a scheduling order's deadline for amendment passes) (citing Gorsuch, 771 F.3d at 1240–41)).

"Rule 16 of the Federal Rules of Civil Procedure requires a good cause showing." Gorsuch, 71 F.3d at 1240.  Rule 16(b)(4) states "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The Tenth Circuit interprets Rule 16 to require a showing that the "scheduling deadlines cannot be met despite [the movant's] diligent efforts."  Gorsuch, 771 F.3d at 1240 (alteration in original) (quoting Pumpco, Inc. v. Schenker Int'l, Inc., 204 F.R.D. 667, 668 (D. Colo. 2001)); see also Colorado Visionary Acad. v. Medtronic, Inc., 194 F.R.D. 684, 687 (D. Colo. 2000) ("'Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party.  Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." (quoting Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co., 986 F. Supp. 959, 980 (D. S.C. 1997), aff'd, 129 F.3d 116 (4th Cir. 1997)).  A district court's refusal to modify a scheduling order falls within its discretion, and the court of appeals reviews it only for abuse of discretion.  Gorsuch, 771 F.3d at 1240.

Federal Rule of Civil Procedure 15(a)(2) provides that once the deadline for amending a pleading as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The rule further states that district courts "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A district court may deny leave to amend

> only for reasons such as "undue delay, bad faith or dilatory motive on the
> part of the movant, repeated failure to cure deficiencies by amendments

4

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment."

United States ex rel. Ritchie v. Lockheed Martin Corp., 558 F.3d 1161, 1166 (10th Cir. 2009) (alterations in original) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).   A district court's decision to deny leave to amend under Rule 15 falls within its discretion, and the court of appeals will review it only for abuse of discretion.   Id.

### III.   NORTHSTAR FAILS TO SHOW GOOD CAUSE TO AMEND UNDER RULE 16

NorthStar moved to amend its Answer on September 20, 2017—more than thirteen months after the August 1, 2016 deadline to amend pleadings.  While both NorthStar and Vivint frame their arguments solely around Rule 15, the Tenth Circuit requires a party seeking to amend pleadings after the amendment deadline has passed to satisfy both the requirements of Rules 15 and 16.  Gorsuch, 771 F.3d at 1240-41; see also SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1518 (finding need to show good cause to add a counterclaim after the date for amendment passed).

NorthStar points to the language in the Court's Scheduling Order that "[a]ll other requests to amend pleadings must be made pursuant to Fed. R. Civ. P. 15," (Schd. Order 3, ECF No. 17), in an apparent attempt to argue that only Rule 15 applies to its Motion.  (Mot. 6, ECF No. 113.)  First, Rule 15 applies to any requests to amend made after the deadline for amending a pleading as a matter of course has passed, whether or not the movant makes the request prior to the amendment deadline set forth in a case scheduling order.  See Fed. R. Civ. P. 15(a)(2).  Furthermore, language in a case scheduling order cannot override the Tenth Circuit's requirements, which mandate that a party seeking to amend its pleadings after expiration of the amendment deadline

satisfy both Rules 15 and 16.  Thus, NorthStar must satisfy the threshold "good cause" requirement of Rule 16(b)(4) before the Court considers whether to grant a motion to amend pursuant to Rule 15.

A movant can satisfy this good cause requirement if, for example, it "learns new information through discovery or if the underlying law has changed."  Gorsuch, 771 F.3d at 1240.  However, if a party "knew of the underlying conduct but simply failed to raise [its] claims" earlier, it cannot establish "good cause" under Rule 16.  Id.  The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend.  Birch, 812 F.3d at 1248.

### A.   New Affirmative Defenses

The three affirmative defenses NorthStar seeks to add to its Answer—accord and satisfaction, release, and payment—all relate to a purported dispute resolution agreement between Vivint and NorthStar.  NorthStar claims it recently learned about the agreement during depositions of three current and former Vivint employees that took place in late July and early September 2017.  (Mot. 3–4, 8, ECF No. 113.)  Specifically, NorthStar asserts, "each of those deponents testified regarding an agreement or relationship" between the parties "pursuant to which the two companies have communicated and resolved cases in which customers have entered into contracts with both companies as a result of an allegedly deceptive sales practice."  (Id. at 4.) NorthStar further asserts that the deponents testified that "the two companies instituted the agreement or relationship before this lawsuit was filed and have continued to act pursuant to this agreement or relationship since the lawsuit was filed."  (Id.)  Vivint

counters that "[a]s a purported party to this alleged agreement, it is disingenuous for NorthStar to contend that it did not know [of] the existence of the alleged agreement, or any defenses related thereto, at the time it filed its Answer in early 2016."  (Opp'n 6, ECF No. 119.)

NorthStar's claim that the existence of the dispute resolution agreement or relationship constitutes "newly discovered information," (Mot. 8, ECF No. 113), falls flat. According to NorthStar, the purported agreement is between the two parties to this case, began before this case was filed, and continues to control the parties' attempts to resolve disputes regarding joint customers.  NorthStar, as a party to the purported agreement, had knowledge or should have had knowledge of this agreement, absent the recent depositions of Vivint's current and former employees.  Thus, NorthStar had access to the factual basis for these affirmative defenses long before the Scheduling Order's deadline to amend pleadings.  Therefore, NorthStar fails to establish good cause to amend its Answer to add the proposed affirmative defenses.  See Johnson v. City of Murray, No. 2:10-cv-01130-TS-EJF, 2012 WL 5194025, at *3 (D. Utah Oct. 19, 2012) (unpublished) (finding defendants failed to show good cause under Rule 16(b)(4) where "the information upon which the [proposed affirmative] defense relies appears to fall within Defendants' control"); J. Vangel Elec., Inc. v. Sugar Creek Packing Co., No. 11-CV-2112-EFM-KMH, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (unpublished) (finding defendant failed to act diligently and demonstrate good cause under Rule 16(b)(4) because it "had access to the factual basis to bring its proposed counterclaims … long before the Scheduling Order deadline"); Zisumbo v. Ogden Reg'l Med. Ctr., 801 F.3d 1185, 1196 (10th Cir. 2015) (finding that the district court did not abuse its

discretion in denying leave to amend where the plaintiff had the facts necessary to assert his proposed claims before the deadline for amending pleadings).

  **B.**  **Deceptive Sales Practice Counterclaims**

  Five of the six counterclaims NorthStar seeks to assert against Vivint relate to allegedly deceptive sales practices toward NorthStar customers.  NorthStar claims that "in recent months" it has received complaints from customers and learned about multiple instances of Vivint sales representatives making false, deceptive, or misleading statements to existing NorthStar customers.  (Mot. 3–5, 7–8, ECF No. 113; Parrish Decl. ¶ 3, ECF No. 113-4.)  NorthStar points to alleged specific instances of deceptive conduct that occurred "in or around" January 2017, February 2017 (two instances), May 2017, June 2017, and July 2017.  (Mot. 5, ECF No. 113; Parrish Decl. ¶ 5, ECF No. 113-4.)  Thus, NorthStar could not have brought these claims prior to August 1, 2016, the deadline to bring a motion to amend.

  To explain its delay in moving to amend once the deceptive acts occurred, NorthStar further asserts that it "typically does not learn of such deceptive sales practices until several months" after they occur.  (Mot. 4, ECF No. 113; Parrish Decl. ¶ 4, ECF No. 113-4.)  Vivint counters that NorthStar fails to detail when it received the reports of deceptive conduct, stating only that it "typically" does not learn about deceptive practices until several months later and points out that the first deceptive conduct allegedly occurred approximately ten months before NorthStar sought leave to assert its counterclaims.  (Opp'n 5, ECF No. 119.)

  NorthStar's deliberate ambiguity regarding when it learned about the instances of deceptive conduct fails to justify the delay in seeking leave to amend to add

counterclaims once it became aware of these allegedly deceptive sales practices. NorthStar states only that it "typically" learns of such conduct months later. Furthermore, even if NorthStar did not learn of the three instances of deceptive conduct occurring in January and February 2017 for "several months" (until, for example, March or April of 2017), it fails to explain its delay in seeking to add counterclaims for those actions until many months later—in late September 2017. The fact that additional instances of deceptive conduct occurred later in 2017 does not justify NorthStar's delay in waiting many months. NorthStar's delay in filing a motion to amend until the last day to serve written discovery and a month before the discovery cut-off deadline suggests a strategy choice.

By its own admissions, NorthStar had notice of the alleged deceptive practices, and the basis for its potential counterclaims in early 2017, many months before it filed its motion for leave. Indeed, NorthStar admits it claimed Vivint has engaged in these same deceptive practices since it answered the Complaint. (Mot. 2, 9, ECF No. 113; Reply Mem. in Supp. of Mot. for Leave to Am. Answer to Assert Countercls. & Add'l Affirmative Defenses ("Reply") 7, ECF No. 128.) Moreover, NorthStar likely had notice of some of its 2017 claims around the time the parties jointly moved the Court in April 2017 to extend the discovery deadline in this case. (Joint Mot., ECF No. 96.) NorthStar did not seek leave to extend the Motion to Amend deadline at that time. (Id.) NorthStar failed to seek leave to amend to add its deceptive trade practice counterclaims diligently, and therefore fails to show good cause to amend its Answer to add these new counterclaims. See Birch, 812 F.3d at 1248 (finding that the district court did not abuse its discretion in denying leave to amend where movant failed to provide an adequate

explanation for waiting four months after learning new facts forming the basis for the proposed amendment to file its motion to amend).

In recommending denial of the Motion to add counterclaims, the undersigned notes that these claims do not arise from the same transactions that form the basis of Vivint's claims, accrued after the filing of the answer in the case, and thus do not constitute compulsory counterclaims. See Fed. R. Civ. P. 13 (setting forth rules for compulsory counterclaims, permissive counterclaims, and counterclaims accruing after pleading); Arch Mineral Corp. v. Lujan, 911 F.2d 408, 412 (10th Cir. 1990) ("Where a defendant acquires a claim after his answer has been filed it is not a compulsory counterclaim even if it arises out of the same transaction."). As a result, denial of the Motion does not foreclose NorthStar from bringing its claims in a separate case.

C.     **Abuse of Process Counterclaim**

NorthStar also seeks to assert a counterclaim against Vivint for abuse of process arising of out Vivint's alleged improper use of information developed during discovery. (Mot. 3, ECF No. 113.) Specifically, NorthStar claims that in October 2016, Vivint deposed NorthStar employee Matthew Thomas and asked questions regarding his licensing and the licensing of other NorthStar employees. (Id. at 5.) Subsequently, "in or around August 2017, NorthStar received notice from the Utah Division of Professional Licensing ("DOPL') that a complaint had been filed against NorthStar relating to Matthew Thomas's work for NorthStar." (Id. at 6.) Obviously, NorthStar could not have brought this counterclaim prior to the deadline to amend.

Nonetheless, NorthStar has not shown good cause for its delay between learning of the underlying facts and filing its Motion to Amend. NorthStar fails to detail clearly

when it learned about the complaint filed with DOPL, stating it occurred "in or around August 2017."  (Id.)  The burden to show good cause under Rule 16 falls on the movant. Gorsuch, 771 F.3d at 1240.  Given the lack of detail, the undersigned cannot conclude that NorthStar acted with diligence in seeking leave to amend its Answer to add this counterclaim.  If NorthStar learned of the DOPL complaint in early August, it could have sought leave to amend much earlier than the end of September since the DOPL complaint provides the only basis for the abuse of process claim.  While waiting a month to file a motion to amend after learning of new conduct might not usually raise an eyebrow, where the motion to amend cutoff expired over a year prior and only a month remained to issue written discovery, the undersigned would generally expect the attorney to recognize the need to act quickly.

Similar to the deceptive trade practice counterclaims, the abuse of process claim does not arise from the same transactions that form the basis of Vivint's claims, accrued after the filing of the answer in the case, and thus does not constitute a compulsory counterclaim.  See Arch Mineral Corp., 911 F.2d at 412.  As a result, denial of the Motion does not foreclose NorthStar from bringing its claim in a separate case.

Consequently, the undersigned RECOMMENDS the District Judge deny NorthStar's motion for failure to meet the good cause standard necessary to modify the schedule in this case pursuant to Federal Rule of Civil Procedure 16(b)(4).

## IV.   NORTHSTAR'S PROPOSED AMENDMENT FAILS TO SATISFY RULE 15

NorthStar's failure to establish good cause to amend its Answer after the Scheduling Order's deadline to amend suffices to deny its motion for leave.  See, e.g., Gorsuch, 771 F.3d at 1242 ("Having concluded [movants] lacked good cause to amend

their pleadings after the scheduling order deadline, we need not reach the Rule 15(a) issue, and decline to do so.").  However, NorthStar's proposed amendment also fails to satisfy Rule 15(a)'s standard, providing an independent basis to deny its Motion.  Under Rule 15(a), a district court may deny leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment."  United States ex rel. Ritchie, 558 F.3d at 1166 (alterations in original) (quoting Foman, 371 U.S. at 182).  In this case, the undersigned recommends denying the Motion either for undue prejudice to Vivint or undue delay by NorthStar.

### A.    Potential Prejudice to Vivint

The "most important[] factor in deciding a motion to amend the pleadings[] is whether the amendment would prejudice the nonmoving party."  Minter v. Prime Equip. Co., 451 F.3d 1196, 1207 (10th Cir. 2006).  "Courts typically find prejudice only when the amendment unfairly affects the defendants 'in terms of preparing their defense to the amendment.'"  Id. at 1208 (quoting Patton v. Guyer, 443 F.2d 79, 86 (10th Cir. 1971)).  Prejudice typically happens "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  Id.

Vivint argues that amendment at this stage of the proceedings would cause it undue prejudice.  (Opp'n 7–9, ECF No. 119.)  Specifically, Vivint argues the proposed amendment requires additional discovery because the "customer interactions in support" of the deceptive practice counterclaims "are distinct" from Vivint's similar

12

claims against NorthStar, and the abuse of process counterclaim and affirmative defenses present significant new factual issues as well.  (Id. at 8.)  Vivint further claims that adjusting the discovery deadlines for an unspecified period of time in a two year old case will cause undue prejudice.  (Id.)  Vivint also notes that because Vivint's declaratory relief claim could moot the remainder of this lawsuit and NorthStar's deceptive practice counterclaims, it should be able to try that claim without further delay. (Id. at 8–9.)

NorthStar counters that "the issues raised in NorthStar's proposed amendments are closely related to the subject matter of the claims and defenses already at issue in this case."  (Mot. 9, ECF No. 113.)  Specifically, it claims that its deceptive sales practice claims do not present significant new factual issues because it asserted an unclean hands affirmative defense that is "closely related to the deceptive sales practices counterclaims that NorthStar seeks leave to assert."  (Reply 7, ECF No. 128.) NorthStar further claims that most of the facts underlying its proposed amendments "are largely available to Vivint," "the Court can adjust discovery deadlines as appropriate to allow additional discovery related to the new matters," and that Vivint will have "ample opportunity to prepare its responses to the amendments" during discovery.  (Mot. 9, ECF No. 113; Reply 8, ECF No. 128.)

The Court agrees with Vivint.  Allowing NorthStar to amend its Answer to add new affirmative defenses and counterclaims at this stage of the case—over a year after the deadline to amend expired and now that trial is ready to be scheduled—would cause Vivint undue prejudice.  NorthStar's claim that its deceptive practice counterclaims are "closely related" to Vivint's claims and its unclean hands affirmative

13

defense is unavailing.  NorthStar's proposed counterclaims raise significant new factual issues.  The counterclaims name specific NorthStar customers who Vivint allegedly subjected to deceptive sales practices and further allege that "[o]n information and belief Vivint has improperly and deceptively solicited hundreds of NorthStar customers by making false statements and misrepresentations to those customers and utilizing unfair and deceptive sales practices."  (Proposed Am. Answer 22, ¶ 23, ECF No. 113-1.)  Discovery concerning these factual allegations would be necessary and could be substantial.  Even though the information about what Vivint did falls within Vivint's control, the effect of those actions on NorthStar would require discovery not within in Vivint's control.  Specifically, NorthStar has not claimed damages in this case previously.  Thus any damages claim would require significant new discovery.

Similarly, the abuse of process counterclaim would require discovery into the damages caused by the alleged abuse of process.  Moreover, an abuse of process claim requires a showing of Vivint's mental state, which would require new discovery.  The proof of Vivint's mental state will likely be circumstantial, thus requiring more than a simple "clean up" deposition.

Lastly, while NorthStar has Vivint's testimony on the alleged agreement giving rise to the affirmative defenses, Vivint does not have NorthStar's testimony on this claim.  Either NorthStar has already produced all evidence, including testimony, it has of this agreement, or Vivint would need to issue new written discovery, reopen depositions, and potentially notice new depositions to flesh out its understanding of these new affirmative defenses.  Because the parties do not appear to have reduced the agreement to writing, the discovery needed would likely be substantial.

14

In essence, NorthStar attempts, right before the close of fact discovery (which has now closed), to tack on an entirely new case to this one, which largely mirrors the allegations that Vivint asserted against NorthStar.  NorthStar's amendment would add expansive counterclaims at the last minute in a case where it previously asserted no counterclaims at all.  The Court would have to vacate the current schedule and amend all existing deadlines, which would delay the scheduling of the trial as well.  The undersigned agrees that Vivint, who filed this case approximately two years ago, is entitled to proceed to trial on the claims it asserted against NorthStar in 2015 without the attendant delay that would occur if the Court permits NorthStar to assert its counterclaims and new affirmative defenses.  Thus, the undersigned RECOMMENDS denial of the Motion to Amend because of the undue prejudice it would cause Vivint at this late date.

**B.      Undue Delay in Seeking Leave to Amend**

In addition to the other good reasons to deny the Motion discussed above, the Court could also deny the Motion based on undue delay.  Although undue delay justifies denial of a motion to amend, the Tenth Circuit has noted the "[e]mphasis is on the adjective:  'Lateness does not of itself justify the denial of the amendment.'"  Minter, 451 F.3d at 1205  (quoting R. E. B., Inc. v. Ralston Purina Co., 525 F.2d 749, 751 (10th Cir. 1975)).  Moreover, "Rule 15(a) does not restrict a party's ability to amend its pleadings to a particular stage in the action."  Id. (citations omitted).  "However, '[a] party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time.'"  Id. (quoting 6 Wright, Miller & Kane, Fed. Practice & Procedure § 1488 (2d ed. 1990)).  "The longer

the delay, 'the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.'" Id. (quoting Steir v. Girl Scouts, 383 F.3d 7, 12 (1st Cir. 2004)).  The Tenth Circuit "focuses primarily on the reasons for the delay" and has held that "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'" Id. at 1206 (quoting Frank v. U.S. West, 3 F.3d 1357, 1365–66 (10th Cir. 1993)).

### 1.   New Affirmative Defenses

NorthStar seeks leave to amend its Answer more than thirteen months after the deadline to do so expired.  NorthStar claims its amendment is nonetheless timely because it only learned about the basis for its proposed affirmative defenses during recent depositions taken in late July and early September 2017.  (Mot. 2–4, ECF No. 113; Reply 3–4, ECF No. 128.)  However, as addressed above, NorthStar knew or should have known about the factual bases for its affirmative defenses—a purported agreement between NorthStar and Vivint entered prior to commencement of this action—long before the deadline to amend and could have asserted them in its prior Answers.  See Johnson, 2012 WL 5194025, at *2 (denying leave to add additional affirmative defense where defendant failed to explain adequately the delay in moving to amend when it should have known about the basis for the defense before the deadline to amend and prior to deposing the plaintiff since it concerned defendant's own actions); Parker v. Champion, 148 F.3d 1219, 1222 (10th Cir. 1998) ("Where [a] party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original [pleading], the motion to

16

amend is subject to denial.") (alteration in original) (quoting State Distribs., Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 416 (10th Cir. 1984)).

### 2.   Deceptive Trade Practice Counterclaims

NorthStar further asserts the timeliness of its proposed deceptive trade practice counterclaims because the facts giving rise to those claims did not occur until 2017. (Mot. 2-5, ECF No. 113.)  However, NorthStar knew about the basis for its potential deceptive trade practice counterclaims in early 2017, and fails to explain adequately why it waited until September 20, 2017—the last day to serve written discovery and a month before the close of fact discovery—to seek leave to amend to add these new counterclaims.  That further instances of deceptive conduct occurred later in 2017 is not an adequate explanation and does not justify the delay in seeking leave to amend earlier.  Vivint alleges that at least three instances of deceptive conduct occurred in January and February 2017, and even if it learned of that alleged conduct "several months" later as it claims is "typical," it still knew about the conduct at some point in early 2017, and around the time the parties asked the Court to extend the fact discovery deadline in April 2017.  (Joint Mot. 2, ECF No. 96 ("Despite the parties' considerable efforts, they require a short five-month extension of the discovery deadlines to complete their discovery efforts and adequately prepare for trial in this matter.").)  Moreover, NorthStar continues to contend that Vivint's deceptive trade practices have continued from before the case began.  (Mot. 2, 9, ECF No. 113; Reply 7, ECF No. 128.)

In its reply, NorthStar relies heavily on the decision in Probert v. The Clorox Company, 258 F.R.D. 491 (D. Utah 2009), to argue that it sought leave to amend in a timely manner.  (Reply 4–5, ECF No. 128.)  In that case, the defendant sought leave to

amend its counterclaims three months after the scheduling order's deadline to amend, and "three business days after receiving the deposition transcripts upon which its proposed counterclaim is based."  Probert, 258 F.R.D. at 493 (emphasis added).  Under these circumstances, the court concluded that the defendant offered an adequate explanation for its delay in seeking leave to amend.  Id.  The facts in this case differ tremendously.  NorthStar knew about multiple instances of purported deceptive conduct in early 2017 yet failed to seek to leave to assert its counterclaims based on that conduct until September 20, 2017.  Unlike in Probert, NorthStar fails to explain adequately why it waited for months to seek leave to assert its new counterclaims, particularly given that the deadline to amend expired more than a year ago and other significant case deadlines, including the close of fact discovery, were fast approaching.

### 3.   Abuse of Process Counterclaim

NorthStar also fails to describe sufficiently when it learned about the basis for its abuse of practice counterclaim—premised solely on a DOPL complaint filed against NorthStar—that it claims to have learned about "[i]n or around August 2017," or explain why it could not sought leave to amend even earlier, particularly given the looming case deadlines.  NorthStar learned about the DOPL complaint "[i]n or around August 2017," but did not seek leave to amend within a few business days of this discovery, as the defendant did in Probert.

NorthStar's failure to explain adequately its delay in seeking leave to amend its Answer to add six new sweeping counterclaims constitutes undue delay and justifies denial of its motion.  See Minter, 451 F.3d at 1206 (noting "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the

delay.'" (quoting Frank, 3 F.3d at 1365–66)); Birmingham v. Experian Info. Sols., Inc., 633 F.3d 1006, 1020–21 (10th Cir. 2011) ("[A] district court has discretion to deny a motion to amend as untimely when the movant's delay is unexplained."); Durham v. Xerox Corp., 18 F.3d 836, 840 (10th Cir. 1994) ("[U]nexplained delay alone justifies the district court's discretionary decision.").

### C. Futility of Amendment

Vivint also argues that NorthStar's proposed amendments would prove futile. (Opp'n 9–12, ECF No. 119.) "'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.'" Lind v. Aetna Health, Inc., 466 F.3d 1195, 1199 (10th Cir. 2006) (quoting Bradley v. J.E. Val–Mejias, 379 F.3d 892, 901 (10th Cir. 2004)). "In determining whether [a] [d]efendant's counterclaim would be subject to dismissal, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to [d]efendant." Probert, 258 F.R.D. at 494.

For example, Vivint claims that the Court would dismiss the five deceptive practice counterclaims because they may be moot if Vivint prevails on its first claim at trial, which seeks a declaratory judgment that NorthStar must submit to binding arbitration to resolve disputes concerning improper sales tactics. (Opp'n 9, ECF No. 119.) While the counterclaims may be moot if Vivint prevails on its declaratory judgment claim, such a result is speculative and does not make the counterclaims futile and subject to dismissal at this time.

Vivint also advances a number of arguments concerning the purported futility of the abuse of process counterclaim and the affirmative defenses. (Opp'n 10-12, ECF No. 119.) The arguments Vivint advances, including that NorthStar's allegations

concerning the abuse of process counterclaim are "flatly incorrect," (id. at 11), do not demonstrate the facial futility of the claims and defenses but rather sound in summary judgment.  See, e.g., Dakota Station II Condo. Ass'n. v. Auto-Owners Ins. Co., No. 14-CV-2839-RM-NYW, 2015 WL 6591888, at *5 (D. Colo. Oct. 30, 2015) (unpublished) (declining to engage in a detailed futility analysis in the context of motion to amend where the arguments were more appropriately addressed in a summary judgment motion).

For these reasons, the Court declines to find the proposed amendments futile. However, futility of the amendments is only one basis on which to deny leave to amend. See Christison v. Biogen Idec Inc., No. 2:11-cv-01140-DN-DBP, 2016 WL 3546242, at *4 (D. Utah June 23, 2016) (unpublished) (finding that because the proposed amendment was untimely, "the additional ground of futility need not be addressed"). NorthStar's attempt to tack onto this case what amounts to an entirely new case— alleging claims similar to those Vivint alleged against it—creates problems beyond the claims themselves because of NorthStar's delay in seeking amendment and the undue prejudice to Vivint that would result if the Court permitted amendment at this late stage of the case.

## V.    RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge RECOMMENDS the District Judge DENY the Motion for Leave to Amend Answer to Assert Counterclaims and Additional Affirmative Defenses (ECF No. 113).

The Court will send copies of this Report and Recommendation to all parties, who are hereby notified of their right to object.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen (14) days of service thereof.  Id.  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 5th day of February 2018.

BY THE COURT:

EVELYN J. FORSE
United States Magistrate Judge