IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VIVINT, INC., a Utah corporation,<br><br>       *Plaintiff*,<br>v.<br><br>NORTHSTAR ALARM SERVICES, LLC, a Utah limited liability company,<br><br>       *Defendant*. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO BIFURCATE TRIAL**<br><br>Case No. 2:16-cv-00106-JNP-EJF<br><br>District Judge Jill N. Parrish |

## I. INTRODUCTION

Plaintiff Vivint, Inc. asks the court to bifurcate the trial into two phases. In the first phase, the parties would litigate Vivint's first cause of action. Vivint, in connection with that cause of action, seeks a declaration that Defendant NorthStar Alarm Services, LLC is bound by a settlement agreement that Vivint entered into with Vision Security, LLC—a non-party that sold many of its assets to NorthStar. If NorthStar is bound by the settlement agreement, Vivint contends that a number of instances where NorthStar used "improper sales tactics" will be subject to binding arbitration. Thus, according to Vivint, the court and the parties will save time and resources if there is a determination as to whether NorthStar is bound by the settlement agreement at the outset. But Vivint has waived its right to arbitration, so whatever issues were subject to arbitration will nevertheless be tried in court. And thus it is not convenient, expeditious, or economical to resolve Vivint's first cause of action at the outset. Vivint's motion to bifurcate is therefore denied.

## II. BACKGROUND

In late 2014, Vivint and Vision, two alarm companies, were embroiled in litigation. But instead of going to trial, they entered into a settlement agreement. Under the settlement agreement, Vision agreed to pay Vivint $1.6 million and, importantly, both parties agreed that they would be prohibited from using "Improper Sales Tactics." An example of an improper sales tactic: a Vision employee tells a Vivint customer that Vivint has gone out of business and is unable to monitor the customer's alarm system.

The settlement agreement provides a mechanism for resolving disputes when one party claims that the other used improper sales tactics. If one party alleges that the other "engaged in Prohibited Conduct [i.e., used an improper sales tactic] for a customer . . . the Parties shall submit the matter to the binding Arbitration Proceeding which is set forth in the attached Exhibit 3 which is expressly incorporated herein by reference."

Exhibit 3 is a four-page document that outlines the arbitration procedures to which the parties agreed. A party commences arbitration by filing a "Notice of Violation." The notice would include information such as a description of the improper sales tactic, the identity of the employee that used the improper sales tactic, and the date on which the employee used the improper sales tactic. In response, the other party could either admit or deny the alleged violation. If the violation is contested, the parties would then provide information to an arbitrator who, after conducting an investigation, would issue a written ruling. This entire process takes a matter of weeks, as opposed to the months, if not years, that it would take to resolve a civil action.

Vivint and Vision also agreed that the settlement agreement would be binding on their successors, assignees, and affiliates. Specifically, the settlement agreement provides, "This Agreement and the terms hereof shall be binding on the successors, assignees, and affiliates of

each Party. Neither Party may avoid the effect, obligations, or rights of this Agreement by assigning, renaming, reconstituting, or re-characterizing their business in any fashion."

In early 2015, shortly after Vivint and Vision executed the settlement agreement, Vision entered into an asset purchase agreement with NorthStar, another alarm company. Vision transferred the majority of its customer accounts, about 8,000, to NorthStar; Vision retained about 1,500 accounts. NorthStar acquired all of Vision's furniture, fixtures, and equipment. And NorthStar acquired Vision's office leases in Orem, Utah, and Tempe, Arizona.

In late 2015, Vivint sued NorthStar in state court. NorthStar promptly removed the action to federal court. Vivint amended its complaint shortly thereafter. Vivint, in its amended complaint, alleges that NorthStar has engaged in a campaign to damage Vivint's reputation and steal its customers. Vivint alleges six causes of action: (1) declaratory relief, (2) deceptive trade practices, (3) violation of the Lanham Act, (4) unfair competition, (5) intentional interference with customer contracts, and (6) injunctive relief. Vivint explains that in the event it does not prevail on its first cause of action, it has pled the remaining five "in the alternative."

Vivint, under its first cause of action, seeks a declaration that NorthStar is bound by the terms of the settlement agreement to the same extent as Vision based on the successor-liability doctrine. Vivint explains that it attempted to initiate arbitration, per the terms of the settlement agreement, by serving a notice of violation on NorthStar. But NorthStar stated that it was not bound by the settlement agreement and refused to submit to binding arbitration.[1]

---

[1] At oral argument, counsel for Vivint stated that Vivint had not taken any formal steps to commence arbitration. This statement, however, appears to have no basis in reality. Vivint, in its complaint, states that it "served a Notice of Violation on Northstar." Vivint even made the "Notice of Violation" a part of the record. *See* ECF No. 174-1. The subject line of the notice is "Arbitration Demand and Notice of Violation." The notice explained that NorthStar had five days to either concede or contest the alleged violations. Vivint followed, to a tee, the procedures outlined in Exhibit 3 to the settlement agreement. So the court struggles to see what basis

In late 2016, Vivint filed a motion for partial summary judgment on its first cause of action. Vivint contended that there were no genuine disputes of material fact and that NorthStar was bound by the terms of the settlement agreement as a matter of law. The court, however, held that there were disputes of material fact and therefore denied the motion.

In late 2017, Vivint filed a motion to bifurcate. Vivint argues that it will save time to bifurcate the trial into two phases. In the first phase, the parties would litigate whether NorthStar is bound by the settlement agreement. If NorthStar is, Vivint believes that certain issues can be sent to arbitration. Specifically, there are instances where NorthStar is alleged to have used improper sales tactics that supposedly fall under the settlement agreement's arbitration clause. So those instances could be tried in front of an arbitrator, as opposed to the court. NorthStar opposes the motion.

### III. DISCUSSION

The court may order a separate trial of one or more separate issues, claims, or counterclaims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). This rule gives the court broad discretion when deciding whether to bifurcate a trial. *Eastridge Dev. Co. v. Halpert Assocs.*, 853 F.2d 772, 781 (10th Cir. 1988).

Vivint contends that resolving its first cause of action has the potential to render a trial on a number of instances of improper sales tactics unnecessary. According to Vivint, if it prevails on its first cause of action, many instances of improper sales tactics will be subject to binding arbitration. But this of course assumes that Vivint will be able to compel arbitration after it prevails on its first cause of action. And that is where Vivint's argument falls apart.

---

counsel for Vivint had when he said that Vivint never attempted to commence arbitration, especially when counsel sent the arbitration demand.

## A. THE SETTLEMENT AGREEMENT CONTAINS AN ARBITRATION PROVISION

"A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. This is the "primary substantive provision" of the Federal Arbitration Act. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

Vivint argues in passing that the settlement agreement does not have a "written provision . . . evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." This argument makes little sense and merits little discussion.

In the settlement agreement, Vivint and Vision agree not to engage in "Prohibited Conduct," which is defined as the use of "Improper Sales Tactics." "In the event of an allegation that one Party has engaged in Prohibited Conduct for a customer . . . the Parties shall *submit the matter to the binding Arbitration Proceeding* which is set forth in the attached Exhibit 3 which is expressly incorporated herein by reference." (emphasis added). Exhibit 3 is a document titled "Arbitration Proceeding" and includes, among other things, the procedures for commencing "arbitration."

In short, the parties agreed that when one party alleges that the other used improper sales tactics, they would submit the matter to binding arbitration. This clause is indisputably a written provision that evidences a transaction involving commerce under which Vivint and Vision (and now perhaps NorthStar as a successor in interest) agreed to settle disputes "arising out of" the settlement agreement, specifically disputes as to whether one party used improper sales tactics. As such, the settlement agreement contains an arbitration provision and it therefore falls under the Federal Arbitration Act.

## B. VIVINT HAS NOT FOLLOWED THE PROCEDURES IN THE FEDERAL ARBITRATION ACT

Section 4 of the Federal Arbitration Act provides the framework under which a party petitions a court to compel arbitration. "A party aggrieved by the alleged failure . . . or refusal of another to arbitrate . . . may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." § 4. "Five days' notice in writing of such application shall be served upon the party in default." *Id.* After this, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* If, however, the failure to arbitrate is "in issue," the court shall "proceed *summarily* to the trial thereof." *Id.* (emphasis added).

Section 4 ensures that courts promptly determine whether issues are subject to arbitration. *See Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 978 (10th Cir. 2014). "[W]hen, as in this case, a quick look at the case suggests material disputes of fact *do* exist on the question whether the parties agreed to arbitrate, round after round of discovery and motions practice isn't the answer." *Id.*; *see also Office Emps. Int'l Union, Local 153, AFL-CIO v. Ward-Garcia, Corp.*, 190 F. Supp. 448, 449 (S.D.N.Y. 1961) (holding that question of whether party was bound by arbitration clause based on successor-in-interest doctrine was governed by procedures set forth in § 4). "Parties should not have to endure years of waiting and exhaust legions of photocopiers in discovery and motions practice merely to learn *where* their dispute will be heard." *Howard*, 748 F.3d at 978. Section 4 requires that courts "process the venue question quickly so the parties can get on with the merits of their dispute in the right forum." *Id.* "It calls for a *summary* trial—not death by discovery." *Id.*

6

Here, the proceedings veered badly off course from the start. Vivint complained that NorthStar refused to submit to arbitration as is required by the settlement agreement. Vivint explained that it had, pursuant to the settlement agreement, served a notice of violation on NorthStar. And according to Vivint, NorthStar stated that it was not bound by the settlement agreement and therefore not required to submit to arbitration.

At this point, Vivint was aggrieved by NorthStar's alleged failure to arbitrate—the issue of arbitration was "ripe" as soon as NorthStar refused to arbitrate. *See* § 4. Vivint, if it wanted arbitration, should have petitioned this court for an order directing that arbitration proceed as set forth in the settlement agreement. *See id.* And because there are issues of fact as to whether NorthStar is bound by the settlement agreement, the court would have proceeded to a summary trial. *See id.*; *Howard*, 748 F.3d at 978.

But Vivint, for whatever reason, never filed a petition to compel arbitration. Rather, Vivint filed a motion for partial summary judgment on its first cause of action and later a motion to bifurcate. Both motions appear to be small steps toward Vivint's ultimate goal—arbitration. But these steps are simply not the process outlined in the Federal Arbitration Act. Vivint is certainly the architect of its lawsuit—but it built its case on shaky ground when it failed to follow the procedures outlined in the Federal Arbitration Act.

C.  **VIVINT WAIVED WHATEVER RIGHT IT HAD TO COMPEL ARBITRATION**[2]

"[T]he right to arbitration, like any other contract right, can be waived." *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 772 (10th Cir. 2010) (citation omitted). There are two forms of

---

[2] Vivint has still not petitioned this court for an order compelling arbitration. But the issue of whether Vivint has waived its right to arbitration is intertwined with Vivint's motion to bifurcate because Vivint insists that it will be able to send certain issues to arbitration if it prevails on its first cause of action. As such, the court finds it necessary to address whether Vivint, if it prevails on its first cause of action, could then send certain issues to arbitration.

7

waiver: (1) when a party intentionally relinquishes or abandons its right to arbitrate, and (2) when a party's conduct in litigation forecloses its right to arbitrate. *BOSC, Inc. v. Bd. of Cty. Commrs.*, 853 F.3d 1165, 1170 (10th Cir. 2017). The latter is at issue here.

There is no set rule as to what constitutes a waiver or abandonment of a right to arbitrate; the determination turns on the facts of each case. *Id.* But the following factors are useful: (1) whether the party's actions are inconsistent with the right to arbitrate, (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate, (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay, (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings, (5) whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration) have taken place, and (6) whether the delay affected, misled, or prejudiced the opposing party. *Id.*

Here, Vivint has waived whatever right it had to arbitration because of the way it litigated this case. First, Vivint has taken actions that are entirely inconsistent with its right to arbitrate. Vivint has had over two years to move to compel arbitration and for whatever reason has failed to do so. It matters little that Vivint was negligent in failing to do so. *See Hill*, 603 F.3d at 773 (noting that the Tenth Circuit affirmed a district court determination of waiver "even though the district court had explicitly stated that it could not tell whether the conduct at issue was intentional or negligent"). Haggling along with discovery and motions practice, as Vivint has done, is inconsistent with its supposed intent to arbitrate—the time to compel arbitration passed long ago. *See MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 886 F.2d 1249, 1261 (10th Cir. 1989) (delay of more than twenty months was inconsistent with right to

arbitrate); *Se. Stud Cos. & Components, Inc. v. Am. Eagle Design Studios*, 588 F.3d 963, 968–69 (8th Cir. 2009) (delay of eleven months was inconsistent with a party asserting its right to arbitrate). The court could likely end the analysis here, but it turns to the remaining factors.

Second, Vivint has substantially invoked the litigation machinery with respect to issues that are supposedly subject to arbitration. The parties have completed fact discovery and the dispositive-motion deadline has passed. According to NorthStar, there have been over thirty depositions taken in this case—and some of those depositions covered issues that would be subject to arbitration. Practically none of the discovery tools that Vivint has invoked would be available to it in arbitration. *See MidAmerica*, 886 F.2d at 1261 (holding that party seeking arbitration prejudiced the opposing party by invoking procedures not available in arbitration, such as "common discovery steps"). In short, Vivint has engaged in extensive discovery and has not yet asserted its right to arbitrate. The efficiency of arbitration is almost entirely undermined when a party waits until after the close of fact discovery to request arbitration—all that remains in this case is motions practice and trial. *See MidAmerica*, 886 F.2d at 1261 (holding that participating in the "entire discovery process" was inconsistent with asserting right to arbitrate).

Third, Vivint has not yet requested arbitration but the trial date is quickly approaching. Vivint states that it intends to seek arbitration at some future point, but fact discovery has closed and the dispositive motion deadline has passed. Once the court rules on dispositive motions, a trial date would be set shortly thereafter. Again, it matters little that Vivint's failure to petition the court for arbitration is due to its own negligence. *See Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 468 (10th Cir. 1988) (party's delay in seeking arbitration, which was due in part to a "failure to examine the contract," suggested waiver of right to arbitrate). Vivint, despite having two years to do so, has not requested arbitration, and the trial date grows nearer each day.

Fourth, important intervening steps have taken place. This factor is largely redundant of the second, so the court need not discuss it in depth. Vivint has taken advantage of judicial discovery procedures by taking depositions and serving subpoenas. *See id.* (party waived right to arbitration because, among other reasons, important intervening steps, such as deposing witnesses, were undertaken). These actions are inconsistent with its right to arbitrate, suggesting that Vivint has waived its right to arbitrate.

Fifth and finally, Vivint's delay in seeking arbitration has prejudiced NorthStar. Vivint forced NorthStar to engage in discovery that would not be available in arbitration. *See MidAmerica*, 886 F.2d at 1261. Vivint has forced NorthStar to defend depositions and respond to discovery requests. These actions caused NorthStar to incur attorneys' fees beyond what it would have incurred during arbitration, and Vivint has used discovery to uncover information that would not be available to it in arbitration. It would cause even further prejudice to NorthStar if Vivint were allowed to engage in extensive discovery, compel arbitration, and then use the fruits of discovery in an arbitration proceeding. NorthStar has been prejudiced by Vivint's delay in seeking arbitration.

In sum, every relevant factor suggests that Vivint has waived its right to arbitration. Vivint's actions are entirely inconsistent with its supposed intent to arbitrate. The time for Vivint to petition the court for an order compelling arbitration was over two years ago. At this point, it is too late.

\* \* \*

Vivint's motion to bifurcate assumes that Vivint will be able to compel arbitration if Vivint prevails on its first cause of action. But Vivint has waived its right to compel arbitration, so it makes little sense to bifurcate the case because the parties will nevertheless have to litigate

the issues that would have been subject to arbitration had Vivint timely sought arbitration. Accordingly, the court declines to bifurcate the trial.

### D. VIVINT'S FIRST CAUSE OF ACTION

The court is concerned that Vivint's first cause of action for declaratory judgment has been rendered moot because it appears to be nothing more than a procedurally improper attempt to compel arbitration. And even if the first cause of action is not necessarily moot, the court questions whether it would be wise to enter a declaratory judgment here. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("[T]he Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. On its face, the statute provides that a court '*may* declare the rights and other legal relations of any interested party seeking such declaration[.]'"). There may be little reason to decide whether NorthStar is bound by the settlement agreement if doing so has no effect on the other claims. *See id.* at 288 ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action."). Accordingly, within twenty-one days from the date of this order, NorthStar may, at its option, file a motion for summary judgment on Vivint's first cause of action on mootness grounds and/or argue that the court should decline to consider Vivint's claim for declaratory relief.

### IV. CONCLUSION AND ORDER

For the reasons set forth above, it is hereby ORDERED:

1. Vivint WAIVED its right to compel arbitration as to any and all issues present in this case;

2. Vivint's Motion to Bifurcate (ECF No. 121) is DENIED;

3. Within twenty-one days from the date of this order, NorthStar may, at its option, file a motion for summary judgment on Vivint's first cause of action and/or argue that the court should decline to consider Vivint's first cause of action.

Signed July 3, 2018

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge