## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VIVINT, INC., a Utah corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>NORTHSTAR ALARM SERVICES, LLC, a Utah limited liability company,<br><br>*Defendant*. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT AND GRANTING MOTIONS TO DISMISS**<br><br>Case No. 2:16-cv-00106-JNP-EJF<br><br>District Judge Jill N. Parrish |

This matter is before the court on three motions for partial summary judgment: (1) Defendant's Motion for Partial Summary Judgment on Vivint's Second, Third, and Fifth Causes of Action, and limiting damages; (2) Vivint's Motion for Partial Summary Judgment on its Fifth Cause of Action for Interference with Economic Relations; and (3) Defendant's Motion for Summary Judgment on Vivint's First Cause of Action. The court heard oral argument on the motions on December 3, 2018. Following argument, the court took the motions under advisement. Also before the court are two motions filed after the hearing: (1) the Stipulated Motion to Withdraw Motion for Summary Judgment on Vivint's First Cause of Action and to Dismiss without Prejudice Vivint's First Cause of Action and (2) the Stipulated Motion to Dismiss, in Part, Vivint's Fifth Cause of Action.

## BACKGROUND

Vivint and NorthStar are both in the business of marketing, selling, and installing electronic home automation and security systems. As two of the more established companies in the industry, Vivint and NorthStar have been competing against each other since 2001.

1

Companies in the home alarm and automation industry market their products and services in a variety of ways, including door-to-door direct sales through company sales representatives. In fact, a majority of Vivint's and NorthStar's sales are generated through door-to-door or direct-to-home sales. Because of the intense competition between these home security companies, the two companies solicit many of the same customers. Vivint alleges that in the course of this competition, NorthStar's representatives have engaged in a campaign to target Vivint's customers, improperly soliciting them through false statements and misrepresentations constituting false and deceptive sales practices that have damaged Vivint's reputation. Vivint has identified and presented evidence of 216 individual Vivint customers who experienced deceptive sales practices by NorthStar representatives between 2012 and 2015.

In late 2015, Vivint sued NorthStar in Utah state court. NorthStar promptly removed the action to federal court. Vivint amended its complaint shortly thereafter. Vivint, in its amended complaint ("Amended Complaint"), alleges that NorthStar has engaged in a campaign to damage Vivint's reputation and steal its customers. Vivint's Amended Complaint alleges six causes of action: (1) declaratory relief, (2) deceptive trade practices in violation of the Utah Truth in Advertising Act; (3) violation of the Lanham Act, (4) unfair competition, (5) intentional interference with customer contracts, and (6) injunctive relief. NorthStar moved for partial summary judgment on the first, second, third, and fifth causes of action. Vivint moved for partial summary judgment on the fifth cause of action. Following a hearing on the motions, the parties stipulated to dismiss the first cause of action for declaratory relief without prejudice and withdraw NorthStar's motion for summary judgment as to the first cause of action, leaving at issue only the second through sixth causes of action.

# ANALYSIS

## A. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir. 1995) (citation omitted). This requires that all reasonable inferences be drawn in favor of the nonmoving party. *Sports Unltd., Inc. v. Lankford Enters., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (citation omitted). A dispute of fact is genuine only if "a reasonable [trier of fact] could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014). "At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Nonetheless, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,' summary judgment in favor of the moving party is proper." *Id.* (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## B. FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT

On January 9, 2019, Vivint and NorthStar filed a Stipulated Motion to Withdraw Motion for Summary Judgment on Vivint's First Cause of Action and to Dismiss without Prejudice Vivint's First Cause of Action. The court **GRANTS** the motion. Vivint's First Cause of Action is dismissed without prejudice and NorthStar's Motion for Summary Judgment as to the First Cause of Action is denied as moot.

## C. SECOND THROUGH FIFTH CAUSES OF ACTION

NorthStar seeks partial summary judgment on Vivint's Second through Fifth Causes of Action. On the Second and Third counts, NorthStar seeks summary judgment on substantive grounds and alternatively seeks to limit the damages available based upon Vivint's alleged failure to properly disclose its damages pursuant to Fed. R. Civ. P. 26(a)(1)(A). On the Fourth and Fifth counts, NorthStar seeks summary judgment only on the issue of damages.[1]

### 1. DAMAGES GENERALLY

For each claim, NorthStar alleges that Vivint has failed to disclose its claimed damages with the specificity required by Fed. R. Civ. P. 26(a)(1)(A)(iii) and that, pursuant to Fed. R. Civ. P. 37(c), Vivint should be precluded from offering any evidence of the damages that it failed to disclose because its failure was neither substantially justified nor harmless. In response, Vivint argues that it complied with its discovery obligations and, alternatively, that any failure to disclose its damages was harmless or substantially justified. For each cause of action for which the damages disclosures are challenged, the court will first address the sufficiency of the disclosures and then analyze whether any failure to disclose was substantially justified or harmless.

#### a. Sufficiency

Fed. R. Civ. P. 26(a)(1)(A)(iii) requires the parties to disclose "without awaiting a discovery request":

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

---

[1] Although NorthStar initially sought summary judgment as to substantive issues on the Fifth Cause of Action, those issues are moot in light of the stipulated motion to dismiss, in part, the Fifth Cause of Action.

In the course of its initial disclosures ("Initial Disclosures") and seven supplements ("First Supplement," "Second Supplement" . . . "Seventh Supplement"), Vivint disclosed seven categories of damages labeled as follows: 1) Utah Truth in Advertising Act; 2) Lanham Act; 3) Actual damages: a) Credits Given to Vivint Customers, b) Lost Reinstallation Fees, c) Lost Reoccurring Monthly Rate, d) New Equipment Installed, and e) the Value of Vivint Customers' Accounts who Cancelled; 4) Goodwill and Reputation Damages; 5) Vivint's Fourth Cause of Action; 6) Vivint's Fifth Cause of Action; and 7) Vivint's attorney fees and costs.[2] NorthStar argues that Vivint failed to properly disclose its 1) UTAA damages, 2) Lanham Act damages, 3) the value of Vivint customer accounts as a basis for Actual Damages, 4) Goodwill and Reputation damages, 5) Vivint's Fifth Cause of Action damages, and 6) Attorney fees and costs. For purposes of deciding the sufficiency of Vivint's disclosures, the court will refer to the most recent supplement for each of the categories.[3] The Fifth Supplement contains the most recent disclosures of all the claimed damages except for the Lanham Act damages, which were most recently disclosed in the Seventh Supplement.

### b. Substantially Justified or Harmless

Pursuant to Fed. R. Civ. P. 37(c)(1), a party that violates Fed. R. Civ. P. 26 by failing to disclose certain information is precluded from using that information in motions or at trial, unless the failure to disclose was "substantially justified or is harmless." "[T]he determination of whether a Rule 26(a) . . . violation is justified or harmless is entrusted to the broad discretion of the district court." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir.

---

[2] Vivint's initial disclosure itemized 10 categories of damages that were consolidated in the Fourth Supplement.

[3] The court will not reference every single disclosure in an attempt to divine the damages that plaintiff seeks.

2017) (alteration in original) (quoting *Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191–92 (10th Cir. 2009)). The Fed. R. Civ. P. 37(c)(1) inquiry consists of several factors including: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *HCG Platinum, LLC*, 873 F.3d at 1200 (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993) (10th Cir. 1999)). "[W]here the exclusion of evidence under Rule 37(c)(1) has the necessary effect of a dismissal, . . . district courts should, in conjunction with the traditional *Woodworker's* inquiry, carefully explore and consider the efficacy of less drastic alternatives." *HCG Platinum, LLC*, 873 F.3d at 1206. Dismissal of a cause of action is an "extreme sanction" ordinarily reserved "for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile." *Id.* The court must review each damages disclosure for each cause of action to determine if plaintiff adequately disclosed the damages it seeks and, if so, if any failure to do so was substantially justified or harmless.

### 2. SECOND CAUSE OF ACTION: VIOLATION OF THE UTAH TRUTH IN ADVERTISING ACT

Vivint's second cause of action alleges violations of the Utah Truth in Advertising Act ("UTAA"), Utah Code Ann. sections 13-11a-1 through 13-11a-6. NorthStar moves for summary judgment on Vivint's second cause of action on the grounds that 1) the UTAA does not apply to door-to-door solicitation; 2) Vivint failed to provide notice as required by the statute before seeking injunctive relief; and 3) the UTAA applies only to conduct occurring in the state of Utah. Alternatively, NorthStar moves for summary judgment as to damages. At oral argument, Vivint conceded that it did not provide the required notice and that the alleged deceptive conduct must occur in the state of Utah.

### a. Covered Conduct

Vivint alleges NorthStar violated the UTAA by engaging in certain "deceptive trade practice[s]" unlawful under the statute. NorthStar argues that the UTAA does not apply to the alleged conduct in this case—NorthStar's representatives going door-to-door and lying to Vivint customers—because the UTAA "applies only to advertising" and the definition of advertising "does not include any oral, in person, representation made by a sales representative to a prospective purchaser." NorthStar Mot. S.J. at 19 (citing *Icon Health & Fitness, Inc. v. Consumer Affairs.com*, No. 1:16-cv-00168-DBP, 2017 WL 2728413, at \*7 (D. Utah 2017) and quoting Utah Code Ann. § 13-11a-2(1)).

#### i. The Procter & Gamble Interpretation

NorthStar relies on the UTAA's statement of purpose, as well as the holdings in *Procter & Gamble Co. v. Haugen*, 179 F.R.D. 622, 634-5 (D. Utah 1998), *aff'd in part, rev'd in part on other grounds sub nom. Proctor & Gamble Co. v. Haugen* 222 F.3d 1262 (10th Cir. 2000)[4] and *Icon Health & Fitness, Inc.*, 2017 WL 2728413, at \*7, for the proposition that the UTAA only applies to advertising. In *Procter & Gamble*, the district court, interpreting the UTAA in light of its purpose statement mandate, held that the statute prevents only false, misleading, and deceptive advertising because the purpose statement "effectively imposes an overarching requirement that otherwise actionable conduct constitute advertising." *Procter & Gamble*, 179 F.R.D. at 635. The court then applied the UTAA's definition of "advertising" found at section 13-11a-2(1) to all of the prohibited "deceptive trade practices" enumerated in section 13-11a-3.

---

[4] Although the case was appealed, the parties did not raise the issue of the UTAA on appeal, and the Tenth Circuit did not address it. *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262 (10th Cir. 2000).

At the time of the *Procter & Gamble* decision, the Utah Supreme Court had not ruled on the scope of the UTAA. Accordingly, the *Procter & Gamble* court interpreted the UTAA under then-applicable Utah state rules of statutory construction. *See Vivint, Inc. v. Alarm Prot., LLC*, No. 2:14-cv-441-CW, 2016 WL 146454, at *2 (D. Utah 2016) (quoting *Ward v. Utah*, 398 F.3d 1239, 1248 (10th Cir. 2005)) ("When interpreting a state statute, a federal court must apply 'state rules of statutory construction.'"). Twenty years later, the Utah Supreme Court has still not ruled on this issue. And because the *Procter & Gamble* decision is not binding precedent, this court must interpret the UTAA pursuant to current Utah state rules of statutory interpretation. This court has evaluated the statutory language and disagrees with the *Procter & Gamble* decision. The court holds that the UTAA is not limited to truth in advertising.

### ii. Covered Conduct is not Limited by the UTAA Definition of Advertising

In Utah, "the primary goal of statutory construction 'is to evince the true intent and purpose of the Legislature' and '[t]he best available evidence of the Legislature's intent is the statute's plain language.'" *Vivint, Inc. v. Alarm Prot*., *LLC*, 2016 WL 146454, at *2 (alteration in original) (quoting *Heaps v. Nuriche, LLC*, 345 P.3d 655, 659 (Utah 2015)). "The court must 'presume that the Legislature used each word advisedly and give effect to each term according to its ordinary and accepted meaning.'" *Id.* (quoting *LeBeau v. State*, 337 P.3d 254, 260 (Utah 2014)). And the plain language of the statute does not limit the covered conduct to advertising.

The UTAA contains six sections: 1) Purpose; 2) Definitions; 3) Deceptive trade practices enumerated; 4) Jurisdiction of district courts; 5) Exemptions; and 6) Truth in Music advertising. Utah Code Ann. §§ 13-11a-1 through 13-11a-6. In limiting the reach of the statute to advertising, the *Procter & Gamble* decision relied heavily on the purpose statement:

> The purpose of this chapter is to prevent deceptive, misleading, and false advertising practices and forms in Utah. This chapter is to be construed to accomplish that purpose and not to prohibit any

> particular form of advertising so long as it is truthful and not
> otherwise misleading or deceptive.

Utah Code Ann. § 13-11a-1. In short, the court interpreted the purpose statement to limit the coverage of the statute to those activities falling with the definition of advertising contained in section 13-11a-2(1). That section defines "advertisement" as:

> any written, oral, or graphic statement or representation made by a
> supplier in connection with the solicitation of business. It includes,
> but is not limited to, communication by noncable television systems,
> radio, printed brochures, newspapers, leaflets, flyers, circulars,
> billboards, banners, or signs. It does not include any oral, in person,
> representation made by a sales representative to a prospective
> purchaser.

Under this interpretation, the conduct of NorthStar's sales representatives in their door-to-door conversations with Vivint customers would be beyond the reach of the UTAA. But this interpretation is simply inconsistent with the plain reading of the statutory language.

Under Utah law, "a statement of purpose is generally 'not a substantive part of the statute.'" *Vivint, Inc. v. Alarm Prot., LLC*, 2016 WL 146454, at *3 (quoting *Price Dev. Co. v. Orem City*, 995 P.2d 1237, 1246 (Utah 2000)). "[I]t may be referred to in order to clarify ambiguities," but the purpose statement "cannot override the clear terms of the law." *Id.* at *3*; *id.* (quoting *Dorsey v. Dep't of Workforce Servs.*, 330 P.3d 91, 96 (Utah 2014)). In other words, the court may only look to the purpose statement if there is some ambiguity in the plain language of the statute.

To determine what conduct is covered by the statute, the court must look at the conduct enumerated in the statute at section 13-11a-3, "Deceptive trade practices enumerated." This section lists twenty or more "deceptive trade practices" that are covered by the statute. Of those twenty practices, some include the term "advertisement" or "advertising" (subsections (i), (j), (k), (m), (n), (p), (q), and (s)) and some do not (subsections (a)–(h), (*l*), (o), (r), and (t)). Although the statutory definition of "advertisement" contained in section 13-11a-2(1) applies to the subsections

that include the term, it has no application to the sections where the term does not appear. Thus, the definition of advertising, which excludes "any oral, in person, representation made by a sales representative to a prospective purchaser," applies only where the term "advertising" is used to define the deceptive trade practice at issue. If the Utah Legislature had intended that limitation to apply to the entire statute, it would have been listed not in the definitions section, but in the section enumerating exempted conduct, section 13-11a-5, which is titled "Exemptions."

### iii. Alleged Conduct is Covered by the UTAA

Vivint alleges that NorthStar engaged in deceptive trade practices prohibited by the UTAA, specifically violations that "occur when, in the course of a person's business, vocation, or occupation that person:"

> (a) passes off goods or services as those of another;
> (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another;
> (e) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
> (h) disparages the goods, services, or business of another by false or misleading representation of fact;
> (t) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Utah Code Ann. § 13-11a-3(1)(a)–(c), (e), (h), (t); *see* Am. Compl. ¶ 72 (citing to the above-quoted subsections). Because Vivint has not accused NorthStar of violating any of the provisions that contain the term advertising, the complained of behavior is not excluded from the coverage of the UTAA. The court therefore denies summary judgment on Vivint's second cause of action.[5]

---

[5] The court notes, however, that this claim relates only to a single Utah customer because Vivint has conceded that the UTAA only applies to conduct occurring within the state of Utah.

### b. Damages

In Vivint's Fifth Supplement, Vivint disclosed that it seeks damages under the UTAA "in the amount of $2,000.00 per violation or Vivint's actual damages, whichever is greater, together with Vivint's attorney fees and costs. Vivint seeks damages related to all violations . . . that took place within the borders of Utah." However, Vivint did not disclose which of its claimed damages took place in Utah, nor the amount of its actual damages for those customers. Thus Vivint's disclosure is insufficient under Fed. R. Civ. P. 26(a) as it does not give NorthStar notice of how much Vivint seeks. But Vivint's failure is harmless and can be remedied. Both parties agree that only one customer, Julia Thrall, was subjected to deceptive sales practices in the State of Utah. *See* Vivint Opp'n Mot. S.J. at 2. Thus, the claim for damages is either $2,000 or the actual damages related to Julia Thrall. As no trial date has been set, the court declines to limit Vivint's UTAA damages at this time, but **orders** Vivint to disclose to NorthStar within **ten days of this order** the damages it claims related to this Utah customer.

### 3. THIRD CAUSE OF ACTION: VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125

NorthStar moves for summary judgment on Vivint's Lanham Act claim, arguing that Vivint has failed to establish that the alleged "false or misleading representations" were made in connection with "the commercial advertising or promotion of its product" and thus Vivint cannot make out a "false advertising" claim. NorthStar also moves for summary judgment on Vivint's failure to disclose its Lanham Act damages. Vivint opposes the motion arguing that 1) Vivint has established sufficient dissemination of NorthStar's message to establish commercial advertising and 2) Vivint sufficiently disclosed its damages.

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), allows for private civil actions to be brought against:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, *uses in commerce* any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the *affiliation, connection, or association* of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) *in commercial advertising or promotion*, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

(emphasis added). By its clear language, 15 U.S.C. § 1125(a)(1) contemplates two categories of claims: (A) claims arising from "false representations concerning the origin or endorsement of goods (false association or product infringement claims)" and (B) claims arising from "false representation in advertising concerning the qualities of goods (false advertising claims)." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 n.3 (10th Cir. 1999) (quoting *Stanfield v. Osborne Indus., Inc.*, 52 F.3d 867, 873 (10th Cir. 1995)). Vivint filed suit under both provisions. At the hearing, NorthStar argued a substantive basis for dismissing Vivint's false advertising claim, but conceded that its summary judgment motion on Vivint's false association claim under 15 U.S.C. § 1125(a)(1)(A) was based solely on Vivint's failure to properly disclose its damages.

### a. False Advertising

NorthStar argues Vivint has failed to state a claim for false advertising under the Lanham Act as a matter of law. The plaintiff in a false advertising claim under 15 U.S.C. § 1125(a)(1)(B) must prove:

> (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injure the plaintiff.

*Sally Beauty Co. v. Beautyco, Inc*., 304 F.3d 964, 980 (10th Cir. 2002) (citation omitted). Although there are several elements to a Lanham Act claim, NorthStar only challenges Vivint's false advertising claim as to the first element, arguing that Vivint cannot establish that NorthStar's material false or misleading representations were made in connection with "commercial advertising or promotion of its product." Specifically, NorthStar argues that the false and misleading statements were not sufficiently disseminated to the public.

### i. *Commercial Advertising*

"In order for representations to constitute 'commercial advertising or promotion' under Section 43(a)(1)(B), they must be":

> (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000) (quoting *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1535–36 (S.D.N.Y. 1994), *holding modified by Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002)). NorthStar argues that the alleged misrepresentations and false statements made by NorthStar's door-to-door sales representatives to 216 Vivint customers were not "disseminated sufficiently to the relevant purchasing public" to constitute commercial advertising or promotion.

### ii. *Public Dissemination*

The Court of Appeals for the Tenth Circuit addressed the public dissemination requirement in *Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*, 275 F.3d 996, 1004–05 (10th Cir. 2002). According to the court, "the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion.'" *Sports Unlimited*, 275 F.3d at

1004–05 (quoting *Gordon & Breach Science Publishers,* 859 F.Supp. at 1536). However, the "terms by their plain, everyday meaning connote *some* level of *public* dissemination of information." *Sports Unlimited*, 275 F.3d at 1005 (emphasis in original). Thus, when not part of a traditional advertising campaign (which by definition constitutes "advertising or promotion"), the court must evaluate the extent of distribution to determine if the conduct reaches the level necessary to constitute advertising or promotion.

The analysis required to determine whether something has been sufficiently disseminated consists of comparing the infringing behavior to the market as a whole. But the level of dissemination necessary as calculated by that ratio is not a settled issue. *Id.* at 1004–05; *see also Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 57 (2d Cir. 2002) (collecting cases).[6] In *Sports Unlimited,* the Tenth Circuit did not provide a concrete test, but rather "assume[d], *arguendo*" that the test to determine "the extent of distribution necessary to constitute commercial advertising or promotion in a particular case" is "elastic." *Sports Unlimited*, 275 F.3d at 1004–05 (alteration in original). Thus "a relatively modest amount of activity may be sufficient in the context of a particular case." *Id*. In *Sports Unlimited*, the evidence presented to the court at the summary judgment stage established that Defendant had given copies of a reference sheet with

---

[6] In *Fashion Boutique*, 314 F.3d at 57, the court noted that "[t]he precise meaning of 'advertising or promotion' has been subject to various interpretations." The court then compared "*Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics,* 905 F.Supp. 169, 182 (S.D.N.Y.1995) (holding that '*any* promotional statement directed at actual or potential purchasers falls within the reach' of the Lanham Act) and *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.,* 880 F.Supp. 1005, 1020–21 (S.D.N.Y.1994) (holding that a single letter addressed to one purchaser constitutes 'advertising or promotion')" with "*Garland Co. v. Ecology Roof Sys., Corp.,* 895 F.Supp. 274, 279 (D. Kan. 1995) (rejecting *Mobius* and holding that the Lanham Act is violated only where the misrepresentations are widely disseminated within the relevant purchasing public) and *Med. Graphics Corp. v. SensorMedics Corp.,* 872 F.Supp. 643, 650–51 (D.Minn. 1994) [(holding that 'statements made by one of a handful of sales representatives to an individual potential customer' are not 'actionable as "commercial advertising or promotion."')]." *Id*.

allegedly false information to two people already involved in a construction project. *Sports Unlimited*, 275 F.3d at 1004. The court held that the distribution to two individuals, not the public at large, did not constitute advertisement or promotion.

Other courts, following *Sports Unlimited*, have also attempted to define the necessary level of dissemination by comparing the number of instances to the market size as a whole. In *Vitamins Online, Inc. v. HeartWise, Inc.*, 207 F. Supp. 3d 1233, 1242 (D. Utah 2016), *order vacated in part on reconsideration*, No. 2:13-CV-982-DAK, 2017 WL 2733867 (D. Utah 2017), the court declined to dismiss Lanham Act claims brought seeking redress for reviews published on an Amazon page. Although the plaintiff could not quantify the exact number of potential customers, the court sustained the claims because the information posted on the webpage was disseminated to all the customers who visited the page, and thus the exact number was irrelevant. But the court in *General Steel Domestic Sales, LLC v. Chumley*, 129 F. Supp. 3d 1158, 1175 (D. Colo. 2015), held that to constitute advertising or promotion, "a dissemination of information must reach some numerically-significant quantity of actual or potential customers of the parties' products." In *General Steel*, the Lanham Act claims at issue centered on false "blog posts" and "pay-per-click" ads published by a "search engine optimization service" on behalf of the counterclaim defendant. Because the counterclaim plaintiff had "not come forward with evidence that shows that the material posted by [counterclaim defendant] reached sufficient numbers of customers . . . to permit the conclusion that it was 'advertising,'" the court granted summary judgment. *Gen. Steel*, 129 F. Supp. 3d at 1175.

NorthStar asks the court to follow the Second Circuit case, *Fashion Boutique*, 314 F.3d 48, and hold that Vivint's claims are insufficient as a matter of law. In *Fashion Boutique,* the court opined that "the touchstone of whether a defendant's actions may be considered 'commercial

advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Id.* at 57. The court held that "[p]roof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement" and decided that the "twenty-seven oral statements" provided by plaintiffs within the potential "marketplace of thousands" did not constitute advertising or promotion because, as a matter of law, the number of statements was too low. *Id.* at 57; 58.

In this case, Vivint has identified 216 customers allegedly subjected to false or misleading statements by NorthStar.[7] NorthStar argues that these 216 instances amount to little more than "isolated disparaging statements" for which Vivint has no means to achieve redress under the Lanham Act in the context of the approximately 1.15 million customers Vivint serves.[8] *Fashion Boutique*, 314 F.3d at 57; NorthStar Mot. S.J. at 23–24. Furthermore, according to NorthStar's calculations, the 216 customers identified by Vivint, averaging 43 customers per year, comprise "less than 0.5%" of NorthStar's total door-to-door sales in any given year.[9] NorthStar Mot. S.J. at 23–24. Vivint responds that the 216 customers identified are only a sample of the total number of customers that NorthStar has targeted and will continue to target over the years, establishing a pattern of dissemination of false representations. Vivint argues that not all customers who are

---

[7] Vivint argues that it has identified 1,800 customers, not 216. But the 1,800 customers identified by Vivint in its "Customer Comparison Spreadsheet" (Vivint_039698–039720, ECF No. 174-11) are merely customers who cancelled their Vivint contracts and subsequently opened NorthStar accounts. Vivint has identified only 216 customers who were subjected to false or misleading statements. *See* "Vivint Customer Spreadsheet" (Vivint_003544–003575, ECF No. 154, Ex. 18).

[8] NorthStar calculates the relevant market size of 1,147,000 customers from Vivint's SEC disclosures in 2016. Vivint does not dispute the number of customers that it disclosed to the SEC.

[9] Vivint objects to this figure on the grounds that it is inherently flawed, because there may be many more customers who cancel without complaining than the recorded customers that first complained and then cancelled, and also, because NorthStar's calculations of total sales numbers are based on improper summaries of disclosed evidence.

subjected to false statements by NorthStar actually call and complain to Vivint before cancelling, therefore Vivint cannot quantify the full scale of NorthStar's behavior. Vivint also argues that the total market size is irrelevant because the Tenth Circuit does not require a statistical threshold to constitute public dissemination.

While the Tenth Circuit has not established a strict statistical threshold, it is clear from *Sports Unlimited*, 275 F.3d at 1004–05, that there must be *some* statistical analysis of the number of alleged incidents in comparison to the relevant market. NorthStar argues that Vivint's total customers should be the relevant market. Vivint has not offered any evidence to contradict this. NorthStar argues that the number of incidents within the market is the 216 customers identified. Vivint responds that 216 is not the appropriate number because Vivint does not know the actual number of customers that have been subjected to false or misleading statements. But Vivint's argument here relies on mere speculation. At the summary judgment stage, Vivint must contest NorthStar's factual representations with evidence of its own. And it has not. Comparing the 216 identified customers to the total market of over one million Vivint customers, the court concludes that these 216 incidents do not rise to the level of widespread dissemination of false statements. Thus, the alleged behavior of NorthStar's sales representatives do not constitute "commercial advertising or promotion" that is actionable as false advertisement under the Lanham Act. The court therefore grants summary judgment in favor of NorthStar on Vivint's false advertising Lanham Act claim.

### b. Damages

NorthStar also seeks summary judgment limiting the damages available to Vivint under both its false advertising and false association Lanham Act claims, arguing that Vivint's damage disclosures were insufficient as a matter of law. Vivint responds that it adequately disclosed the damages it seeks including "(1) disgorgement of profits, (2) actual damages, (3) treble damages,

(4) costs and attorney fees, and (5) permanent injunctive relief." Vivint Opp'n Mot. S.J. at 33. However, in Vivint's most recent Lanham Act disclosure, Vivint's Seventh Supplement, Vivint disclosed only that under the Lanham Act it seeks "Defendant's profits from violations of the Lanham Act" and "general damages, treble damages, attorney fees, and costs pursuant to 15 USC 1117(a) [sic]." Because the court considers only the most recent supplement as the operative disclosure, the court must work from the Seventh Supplement. Of the damages Vivint identifies in that document, Vivint sufficiently disclosed only its claims for attorney fees and costs and treble damages. The remaining damages were not adequately disclosed.

### i. Attorney's Fees & Treble Damages

Vivint sufficiently disclosed that it seeks attorney's fees and treble damages. Although it did not provide a computation of these damages, neither category requires a computation because the damages cannot be calculated until after judgment has been rendered. *See Young Elec. Sign Co. v. Hartford Cas. Ins. Co.*, No. 2:13-CV-120, 2013 WL 2302726, at *1 (D. Utah 2013) (Allowing pleadings to "leave several demands for relief open for necessary future determination including attorneys' fees, interest, and punitive damages."); *see also Iguarta v. Mid-Century Ins. Co.*, No. 2:16-CV-00849-JAD-CWH, 2017 WL 1013869, at *3 (D. Nev. 2017) ("Attorney fees in this context are not actually damages, but costs associated with litigation . . . .") Thus, Vivint did not have a duty to disclose more than the fact that it will seek these damages.

### ii. Disgorgement of Profits

NorthStar argues that Vivint's disclosure of the damages it seeks as disgorgement of profits is deficient. In Vivint's Fifth Supplement, Vivint identified a spreadsheet, "VIVINT_036414-36417," as its disgorgement damages calculation. But Vivint's Fed. R. Civ. P. 30(b)(6) witness testified that he did not know whether or not VIVINT_036414-36417 formed the basis of Vivint's Lanham Act damages calculation. And when Vivint amended its Lanham Act disclosures in its

Seventh Supplement, Vivint removed any reference to the spreadsheet. The witness's testimony and the changes in the Seventh Supplement suggest that Vivint is no longer seeking such damages. But Vivint argues that it did not need to disclose the disgorgement damages at all.

Vivint correctly argues that at trial it must only prove defendant's total sales as provided in 15 U.S.C. § 1117(a): "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." *See also Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1163 (10th Cir. 2013) (quoting 15 U.S.C. § 1117(a)). And Vivint points out that NorthStar is not disadvantaged by its failure to disclose its claimed disgorgement profits because NorthStar is certainly aware of its own total sales. But absent proper disclosure, NorthStar does not know for which of its customers Vivint intends to seek disgorgement profits.

At the hearing, Vivint represented that of the 216 customers identified in this case, some of the customers suffered false advertising injury and some suffered false association injury. But Vivint has failed to identify which customers suffered which injury. This failure would be of no consequence if Vivint had prevailed on the substance of both Lanham Act claims. But the court has granted summary judgment on Vivint's false advertising claim. Thus, Vivint's failure to disclose this information places the burden on NorthStar to prove how much of its total sales can be attributed to customers that were the victims of NorthStar's alleged false association violations.

Although Vivint's disgorgement damages disclosures are insufficient under Fed. R. Civ. P. 26, the court concludes that its failure to disclose is harmless or substantially justified. The relevant inquiry consists of several factors including: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad

faith or willfulness." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017) (quoting *Woodworker's Supply, Inc. v. Principal Mutual Life*, 170 F.3d 985, 993 (10th Cir. 1999)). NorthStar is not prejudiced by Vivint's failure to specify for which of its 216 identified customers it is seeking false association damages because NorthStar controls its own sales and profits data, and thus has access to the relevant information for all of the 216 customers. As the trial date has yet to be set, Vivint has time to specify for which of the 216 customers it is seeking false association damages. Finally, the failure to disclose does not appear to be in bad faith because even though Vivint believed that it did not have to disclose NorthStar's profits at all, Vivint still made an attempt to calculate the damages in an earlier disclosure. Although Vivint's failure is not prejudicial, Vivint must still correct its disclosures. For these reasons, the court orders that Vivint identify those customers it alleges suffered false association injury and specify for which of those customers it will seek disgorgement damages under the Lanham Act. The court therefore denies NorthStar's motion for summary judgment on the disgorgement of profits damages.

### iii. Actual Damages

Vivint also failed to disclose that it seeks "Actual Damages" under the Lanham Act. In its Fourth Supplement, Vivint disclosed that it seeks "actual damages categorized by category," but in its Fifth Supplement, Vivint no longer disclosed that it was seeking actual damages under the Lanham Act. Vivint also failed to disclose that it was seeking actual damages in its Seventh Supplement. Thus, the court finds that Vivint has failed to disclose the actual damages it seeks under the Lanham Act.

The court next evaluates whether that failure was harmless or substantially justified. The relevant inquiry, stated above, leads to the conclusion that the failure was neither harmless nor substantially justified. Unlike the disgorgement disclosures that depend on information available

to NorthStar, NorthStar does not have access to the information relevant to the actual damages that Vivint seeks. Vivint represented in its two most recent supplements (Fifth and Seventh) that it was not seeking actual damages under the Lanham Act. Thus, its attempt to claim them in opposition to NorthStar's motion for summary judgment is without basis. NorthStar reasonably relied on Vivint's withdrawal of its claim for actual damages. And because excluding actual damages under the Lanham Act will not result in dismissal of this claim, the sanction is not overly harsh. For these reasons, Vivint is precluded at trial from seeking actual damages under the Lanham Act.

### iv.  General Damages

Vivint has also announced its intent to seek "general damages." *See* Fifth Supplement at ¶ B.2; and Seventh Supplement at ¶ A.1. But Vivint did not disclose what type of general damages it seeks. Vivint represented in its opposition and at the hearing that it seeks "goodwill and reputation damages," as general damages, and that this was disclosed at paragraph B.4 of its disclosures. *See* Fifth Supplement. But Vivint did not disclose goodwill and reputation damages under its Lanham Act category nor did it cross-reference the goodwill and reputation disclosure section. In short, Vivint failed to disclose that it was seeking general damages. And the court finds this failure is neither substantially justified nor harmless. And even had Vivint properly disclosed that it seeks goodwill and reputation damages and cross-referenced paragraph B.4, for the reasons explained below, its goodwill and reputation damage disclosures are deficient. Thus, Vivint is precluded from seeking general damages at trial under the Lanham Act.

### v.  Goodwill and Reputation Damages

Vivint has failed entirely to disclose its goodwill and reputation damages. Thus it may not seek goodwill and reputation damages under any of its claims. Vivint identified goodwill and reputation damages as one of its damages categories, and disclosed that goodwill and reputation "damages will likely be calculated and presented through expert testimony." Fifth Supplement at

¶ B.4. But Vivint did not disclose any experts in this case and expert discovery closed on March 2, 2018. Vivint now argues that it does not need an expert to testify as to goodwill and reputation damages and that it met its burden under Fed. R. Civ. P. 26 by simply disclosing that it intended to seek goodwill damages. The court disagrees. Vivint stated that it would provide an expert to calculate the goodwill damages that it seeks but then failed to do so. Vivint cannot avoid the requirements of Fed. R. Civ. P. 26 by now claiming that it is not required to produce an expert, especially when it failed to offer any other means of computing its damages for loss of goodwill and reputation.

Vivint's failure to disclose is neither harmless nor substantially justified. NorthStar would be prejudiced if Vivint were allowed to now seek these damages. Goodwill damages are complex and require expert testimony. "A loss of goodwill claim compensates for harm to the value of the business as an ongoing concern and involves complex financial calculations" that "require[] expert testimony." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1222 (11th Cir. 2010). By failing to disclose a damages expert well past the date on which expert disclosures were due, Vivint has prejudiced NorthStar in its ability to defend against such claims. Moreover, Vivint has not offered any explanation for its failure to disclose. *Asia Strategic Inv. Alls. Ltd. v. Gen. Elec. Capital Servs., Inc.*, 1997 WL 122568, at *4–5 (D. Kan. 1997) ("Plaintiff has the burden to show that it was substantially justified in failing to comply with Fed. R. Civ. P. 26(a).").

Because of its failure to disclose, Vivint may not seek any goodwill or reputation damages at trial. Although exclusion is a harsh penalty, it is justified in this case, inasmuch as allowing the tardy damages claims would result in fundamental unfairness to NorthStar, while excluding them does not result in the complete dismissal of any of Vivint's claims. *See Orjias v. Stevenson*, 31

F.3d 995, 1005 (10th Cir. 1994) ("[T]he district court may be found to have abused its discretion if the exclusion of testimony results in fundamental unfairness in the trial of the case.").

### 4. FOURTH CAUSE OF ACTION: UNFAIR COMPETITION

Neither Vivint nor NorthStar moved for summary judgment on Vivint's claim for unfair competition. But NorthStar moved for partial summary judgment limiting the damages available to Vivint under this claim.

Vivint seeks actual damages under its claim for unfair competition. Vivint's disclosures indicate that it intends to claim actual damages stemming from (a) credits given to Vivint customers, (b) lost reinstallation fees, (c) Lost Reoccurring Monthly Rate, (d) New Equipment Installed, and (e) the value of Vivint customers' accounts who cancelled. NorthStar does not challenge Vivint's disclosures related to claims (a) – (d), which all reference Vivint_036386-7, but NorthStar does challenge the adequacy of Vivint's disclosures of the value of Vivint's customers' accounts.

Vivint disclosed that it seeks to recover the value of the accounts that were cancelled. It stated that "Vivint and the alarm security industry calculates [sic] the value of the prospective economic relations of an account by multiplying the contractual reoccurring monthly rata (RMR) by a multiple of thirty-five." Fifth Supplement at ¶ B.3.e. At oral argument, Vivint represented that of the 216 identified customers, only twenty or so would have damages falling under this category. NorthStar challenges the sufficiency of this disclosure because Vivint has not identified the customers at issue nor provided a spreadsheet containing the calculations. NorthStar also objects because Vivint has not disclosed the basis for multiplying by thirty-five.

Vivint points to three spreadsheets that support its claim for the value of customer accounts: Vivint_36388-9 ("Exhibit 7"), Vivint_36365-36383 ("the Licensing Spreadsheet"), and Vivint_039681-39697 (the "Updated Licensing Spreadsheet"). Vivint disclosed Exhibit 7 in its

Fifth Supplement[10] as part of fifty other pages of disclosures. The spreadsheet contains a calculation of the estimated value of the accounts. The spreadsheet would qualify as a sufficient disclosure, but only if Vivint had actually referenced it in its damages disclosures. Instead, Vivint merely produced the document without referencing it in any of its disclosures. Similarly, while the Licensing Spreadsheet was produced with the Fifth Supplement, that spreadsheet was not referenced in any of the damages disclosures. As for the Updated Spreadsheet, NorthStar argues that it was never produced. Although the Updated Spreadsheet contains bates numbers, there is no evidence that Vivint produced it or referenced it in any of its damages disclosures. Thus, the court finds that Vivint did not adequately disclose its customer account calculations to NorthStar.

NorthStar asks that Vivint's actual damages be limited to those that were properly disclosed, excluding the value of the customer accounts. Although Vivint violated Fed. R. Civ. P. 26(a) by failing to reference the appropriate spreadsheet in its damages disclosures, that failure was harmless or substantially justified. Vivint did disclose how it intended to calculate the damages and provided the underlying data necessary to make the calculation. Vivint also disclosed the "RMR" for each customer at issue at Vivint_036386-7. That spreadsheet is referenced in Vivint's disclosures of the other actual damages ((a)-(d)). As no trial date has been set, reviewing the newly identified spreadsheet will not delay the proceedings. Finally, Vivint does not appear to have acted in bad faith. For these reasons, the court finds that Vivint's failure to disclose was excusable. Thus, NorthStar's motion for summary judgment is denied as to Vivint's claims for actual damages. But Vivint is hereby ordered to provide an updated customer account disclosure that includes the complete calculation of the claimed damages within **ten days** of this order.

---

[10] In its opposition memorandum, counsel incorrectly refers to Vivint's Fourth Supplement.

NorthStar also argues that the court should limit Vivint's damages based on its failure to disclose how it calculated the multiplier of thirty-five. Although Vivint disclosed the multiplier, NorthStar challenges its failure to identify an expert witness to testify as to the basis for the number. Vivint responds that an identified lay witness will testify as to the basis for the calculation. In short, NorthStar disputes the sufficiency of the evidence to support Vivint's disclosure. But that issue is not now before the court. At issue here is Vivint's alleged failure to disclose its damage calculations. And the court has found that Vivint may cure the disclosure of the amount of actual damages it seeks under its claim for unfair competition. Thus, the court is unwilling to limit Vivint's claim for damages at this juncture. NorthStar's objection appears to be an evidentiary objection that it may raise through a motion in limine or an evidentiary objection at trial.

### 5. FIFTH CAUSE OF ACTION: INTENTIONAL INTERFERENCE WITH CONTRACT[11]

Under Utah law,[12] to prevail on a claim for intentional interference with economic relations, a plaintiff must establish: "(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff." *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553, 565 (quoting *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982)). In its Amended Complaint, Vivint alleged that NorthStar's improper interference with Vivint customers was accomplished

---

[11] The tort of intentional interference with contract is one of two torts encompassed under the umbrella term of tortious interference with economic relations: 1) intentional interference with performance of a contract (Restatement (Second) of Torts § 766A); and 2) intentional interference with prospective contractual relations (Restatement (Second) of Torts § 766B). *See Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 301 (Utah 1982), *overruled on other grounds by Eldridge v. Johndrow*, 2015 UT 21, 345 P.3d 553. Because many of the elements of the two claims overlap, courts often analyze the two claims together under the umbrella of tortious interference with economic relations. *See Anderson Dev. Co. v. Tobias*, 2005 UT 36, 116 P.3d 323; and *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991).

[12] At oral argument, the parties stipulated that Utah law applies to all of the tortious interference claims, even the claims where the improper means occurred outside of Utah.

through improper means including: 1) "making false, misleading, and deceptive representations to Vivint's customers in violation of the statutes and common law set forth herein"; 2) "soliciting Vivint's customers in jurisdictions where it was not properly licensed to solicit such customers"; and 3) "soliciting Vivint customers through sales representatives who are classified as independent contractors" in violation of "the applicable licensing laws in the jurisdictions where NorthStar sells its goods and services." *See* Amended Complaint ¶¶ 102–104. NorthStar argued that its alleged violations of certain licensing laws were unrelated to its alleged interference and therefore did not qualify as improper means that could give rise to a claim for intentional interference. Vivint apparently conceded this argument and, on January 11, 2019, Vivint and NorthStar filed a Stipulated Motion to dismiss with prejudice Vivint's claim that NorthStar interfered with Vivint's customer relations by violating state licensing laws.[13] The court **HEREBY GRANTS** the Stipulated Motion and dismisses those claims with prejudice.

### a. Partial Summary Judgment Motions in Light of the Stipulated Dismissal

Initially, NorthStar moved for partial summary judgment on Vivint's Fifth Cause of Action seeking to limit the available damages and also on the substantive grounds that 1) Vivint failed to offer sufficient evidence of statutory violations, 2) Vivint lacks standing to assert these violations, and 3) Vivint has failed to show a nexus between the alleged improper means and tortious interference. Vivint filed a cross-motion for partial summary judgment on its fifth cause of action on the grounds that 1) NorthStar intentionally interfered with Vivint's customer contracts and 2) that statutory licensing violations constitute improper means. In light of the dismissal of the allegations that NorthStar's violation of state licensing laws gave rise to a claim for tortious

---

[13] The allegations supporting the dismissed claims are contained in the Amended Complaint at paragraphs 56-58, 103, and 104.

interference, the court denies as moot NorthStar's and Vivint's motions as to the licensing law issues.[14] But the court must still address Vivint's motion on the intentional interference prong and NorthStar's motion as to damages.

### b. Intentional Interference

Vivint seeks partial summary judgment on its claim for NorthStar's intentional interference with Vivint's customer contracts. NorthStar does not dispute that it interfered with Vivint's existing and potential customer contracts, but argues that Vivint has failed to present sufficient evidence to establish that NorthStar "intentionally" interfered. The court agrees with NorthStar. In Vivint's motion for partial summary judgment, Vivint presented no evidence that NorthStar's interference with Vivint customers was intentional. After NorthStar raised this failure in its opposition memorandum, Vivint filed a reply brief referencing excerpts from a deposition transcript that were neither cited nor discussed in Vivint's initial motion. The court declines to grant summary judgment to Vivint on this claim based on material first presented in Vivint's reply memorandum.

### c. Damages

NorthStar also moves for partial summary judgment, alleging that Vivint failed to properly disclose the damages it seeks for customers allegedly lost as a result of NorthStar's tortious interference. In its Third and Fifth Supplements, Vivint disclosed that it seeks the value of the

---

[14] The stipulated motion to dismiss is particularly well-taken inasmuch as NorthStar would clearly have prevailed on Vivint's claim for intentional interference based on alleged regulatory violations. Utah law does not allow recovery under a tortious interference theory based on alleged regulatory violations unrelated to the alleged interference. The alleged regulatory violations by NorthStar did not cause Vivint's customers to break their contracts with Vivint and thus did not "cause" Vivint's harm. *See U.P.C., Inc. v. R.O.A. Gen., Inc.*, 990 P.2d 945, 957 (Utah 1999) (holding that even though the defendant "may have had the wrong permit on the wrong sign and may have violated the Utah Outdoor Advertising Act," that wrong was not an "improper means [used] to intentionally interfere with [plaintiff's] potential economic relations.").

customer accounts that NorthStar took from Vivint in violation of state licensing laws, as well as Vivint's lost contractual revenue. In its Third Supplement, Vivint claims that NorthStar interfered with 1000 Vivint customers in violation of state licensing laws. In its Fifth Supplement, Vivint adds a damage claim for Vivint's lost contractual revenue related to the accounts lost in violation of state licensing laws "in an amount no less than $23,815." Fifth Supplement at ¶ B.4. But Vivint is not entitled to damages for customers lost in violation of state licensing laws because that claim has now been dismissed.

Vivint has failed to identify the customers it alleges were lost through improper means other than violations of state licensing laws. In light of the recent stipulated motion to dismiss the claims for damages based on the licensing violations, the court will provide Vivint an opportunity to cure the failure. Vivint has identified 216 customers in this lawsuit. The court **orders** Vivint to identify which of these 216 already identified customers were lost due to tortious interference arising from wrongful conduct other than the state licensing violations and to disclose the damages it claims for each such customer. The disclosures are due within **ten days** of this order.

## ORDER

The court **HEREBY GRANTS** the Stipulated Motion to Dismiss Vivint's First Cause of Action (ECF No. 220), **DENIES AS MOOT** NorthStar's Motion for Partial Summary Judgment as to the First Cause of Action (ECF No. 202), **GRANTS** the Stipulated Motion to Dismiss in Part Vivint's Fifth Cause of Action (ECF No. 221), **DENIES** Vivint's Motion for Partial Summary Judgment on its Fifth Cause of Action (ECF No. 157), and **GRANTS IN PART AND DENIES IN PART** NorthStar's Motion for Partial Summary Judgment (ECF No. 154). Specifically:

1) Vivint's First Cause of Action for a declaratory judgment is **DISMISSED WITHOUT PREJUDICE**, each party to bear its own attorney fees and costs;

2) On Vivint's Second Cause of Action under the UTAA, the court:

   a. **GRANTS** in part and **DENIES** in part NorthStar's motion for partial summary judgment on Vivint's claim under the UTAA, holding that door-to-door sales are covered conduct but Vivint may only bring a claim for its single Utah customer and Vivint may not seek injunctive relief on this claim;

   b. **DENIES** summary judgment limiting Vivint's damages; and

   c. **ORDERS** Vivint to cure its damages disclosures within ten days;

3) On Vivint's Third Cause of Action, the court:

   a. **DENIES** NorthStar's motion for partial summary judgment on Vivint's false association Lanham Act claim;

   b. **GRANTS** NorthStar's motion for partial summary judgment on Vivint's false advertising claim;

   c. **GRANTS** NorthStar's motion for partial summary judgment excluding actual and general damages under the Lanham Act; and excluding goodwill and reputation damages under any of Vivint's claims;

   d. **DENIES** NorthStar's motion for partial summary judgment limiting Vivint's damages for disgorgement of profits, attorney's fees and costs, and treble damages under the Lanham Act; and

   e. **ORDERS** Vivint to identify which of its customers suffered injury due to false association under the Lanham Act and cure its disgorgement of profits damages disclosures within **ten days**;

4) On Vivint's Fourth Cause of Action, the court:

    a. **DENIES** NorthStar's motion for partial summary judgment limiting the actual damages available; and

    b. **ORDERS** Vivint to cure its actual damages customer account disclosures within **ten days**;

5) On Vivint's Fifth Cause of action, the court:

    a. **DISMISSES WITH PREJUDICE** the allegations set forth in Paragraphs 56–58, 103, and 104 of Vivint's First Amended Complaint with each party to bear its own attorneys' fees and costs;

    b. **DENIES** NorthStar's motion for partial summary judgment seeking to limit Vivint's tortious interference damages; and

    c. **ORDERS** Vivint to cure its tortious interference claim damage disclosures within **ten days**.

Signed March 8, 2019

BY THE COURT

_____

Jill N. Parrish
United States District Court Judge